**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROCKTAPE, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| ED LECARA, MD, SMART | ) | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| TOOLS, LLC, an OHIO CORP., | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT AT LAW**

Now comes the Plaintiff, RockTape, Inc., a California Corporation, by its attorneys, Law

Offices of Tracy E. Stevenson, P.C., and for its Verified Complaint at Law, states as follows:

**JURISDICTION AND VENUE**

1.     This court has jurisdiction pursuant to the Uniform Trade Secrets Act

("UTSA" and sometimes referred to herein as the "Act") 18 U.S.C.A § 1836, *et seq.*

This court also has jurisdiction pursuant to the Copyright Infringement Act, 17

U.S.C.A § 1201 *et seq.*

Finally, this court has jurisdiction pursuant to 28 U.S.C.A. § 1332.  The suit is

between citizens of different states and the amount in controversy exceeds $75,000.

2.     Venue is proper as the acts complained of occurred in Illinois while the

Defendants were each doing business in Illinois.

1

**PARTIES**

3.      The Plaintiff, Rock Tape, Inc, is a corporation duly formed in the State of California with a principle place of business in California and thus is a citizen of California.

4.      The Defendant, Ed LeCara, D.C. (hereafter "LeCara") is an individual citizen of the State of Colorado and at all relevant times was doing business in the State of Illinois.

5.      The Defendant, Smart Tools, LLC. is a corporation duly formed in the state of Ohio and each member of Smart Tools, LLC is a citizen of Ohio.  Smart Tools, LLC was at all relevant times doing business in the State of Illinois.

**COMMON FACTS**

6.      RockTape, Inc. is a business which engages in creating certain kinesiology tapes and other products, specifically Instrument Assisted Soft Tissue Mobilization ("IASTM") tools for use by chiropractors, physical therapists, and individuals to assist the wellness and fitness of said individuals.

7.      At all relevant times as part of its business model, RockTape engaged via written Consulting Agreement certain medical professionals and other specialists in the field for purposes of researching, branding and marketing, through both written content and seminars, RockTape's proprietary copyrighted techniques and products including but not limited to IASTM content.

8.      On or about March 1, 2015, RockTape and LeCara entered into a written Consulting Agreement (hereafter "Agreement") in which LeCara agreed to furnish certain services to RockTape in exchange for monetary payment.  A true and correct copy of the Consulting Agreement is attached hereto and incorporated herein as Exhibit A.

2

9.     The Consulting Agreement between RockTape and LeCara which remained in effect through November 2016 when it was terminated by RockTape, contained various clauses setting forth the obligations and duties of LeCara including the duty of Assignment of Inventions (See Agreement at para. 6), Confidentiality (see Agreement at Para. 7), and Non-Solicitation (See Agreement at para. 7).     Each clause, per the Agreement the obligations set forth above extended for one year following termination.

10.     Based upon the terms set forth in the Agreement, RockTape disclosed to LeCara certain proprietary information to allow LeCara to perform the duties set forth within the Agreement and assist RockTape in creation and development of medical devices including but not limited to IASTM tools and content.

11.     Throughout the time in which RockTape consulted with LeCara, RockTape had in place certain provisions to ensure the secrecy of its products and instructor content so the information was not generally available or known the to the public.

12.     In January 2016, during the time in which the Agreement and NDA remained in effect, LeCara approached Greg van den Dries, CEO of RockTape, to enquire whether he could ghost write content for RockTape's competitor, Smart Tools.  LeCara was told that due to the terms of his agreement, he was not permitted to work simultaneously for RockTape and its direct competitor in the IASTM field.

13.     LeCara agreed not to pursue employment or contractor status with Smart Tools which would violate his duties and obligations owed to RockTape and acknowledged the on-going nature of the contractual obligations and duties owed to RockTape.

14.     Further, in late 2015 or early 2016, LeCara, acting as an agent of Smart Tools approached at least two RockTape contractors whom he knew at the time to be under Non-Disclosure Agreements ("NDA") to induce them to teach for Smart Tools, while being aware of his obligations to RockTape to refrain from such solicitation pursuant to the terms of the Agreement. A true and correct copy of the NDA is attached hereto and incorporated herein as Exhibit B.

15.     In approximately March through May 2016, Smart Tools released its new bound content which included IATSM content written by LeCara at a time during which LeCara was under contract with RockTape. RockTape did not grant authorization for LeCara to disseminate its proprietary information to Smart Tools.

16.     In approximately March 2016 Smart Tools, with the direct assistance of LeCara modified its website incorporating, in part RockTape's proprietary IASTM content.

17.     Immediately thereafter, Smart Tools began advertising RockTape's proprietary IASTM content throughout the country, including Illinois.

18.     In Fall of 2016 LeCara, holding himself out as an agent for Smart Tools, came to Illinois to instruct at a Smart Tools conference on the topic of IASTM content with the intent to benefit Smart Tool and himself from the sale of IASTM products and procedures when he knew that the content was the proprietary property of RockTape.

19.     In November 2016, RockTape became aware that LeCara was openly affiliated with Smart Tools when it discovered LeCara was named as instructor in documents submitted by Smart Tools to the member accessible California Physical Therapy Board for continuing education credit requirements.

20.     On November 4, 2016, RockTape sent a letter to Smart Tools and LeCara demanding they cease and desist any and all use of RockTape research, product, content, and marketing materials.

21.     LeCara admitted to RockTape personnel orally and in writing that he wrote the content for Smart Tools based upon the proprietary information and research he obtained from RockTape.

## COUNT I
### Violation of the Uniform Trade Secrets Act

22.     Plaintiff adopts herein by reference paragraphs 1 through 21 above as though fully stated herein as paragraph 22 of Plaintiff's Count I.

23.     At all times herein, RockTape created a formula and compilation of information related to the marketing and branding of certain medical devices and treatment procedures including but not limited to IASTM and related content to be used in its business to gain an advantage over competitors who do not know or otherwise use it.

24.     At all relevant times RockTape has in place certain policies and procedures to protect the secrecy of RockTape's business and products including the requirement that all personnel, instructors and contractors execute agreements, including the Agreement and NDA attached hereto as Exhibits A and B, acknowledging the confidential and proprietary nature the products and content developed by or for the benefit of RockTape.

25.     RockTape derives actual and potential independent economic value from protecting the content from becoming generally known to the public or other entities such as Smart Tools who can gain economic value from its disclosure.

26.     At all times herein, LeCara, individually and as agent of Smart Tools and Smart Tools possessed information related to IASTM and marketing content for IASTM developed exclusively for the benefit of RockTape and which by agreement was the proprietary information of RockTape and no others.

27.     LeCara improperly and without authorization disclosed and otherwise released to the public RockTape's IASTM content and used it for the benefit of himself and Smart Tools by placing the secret information on Smart Tools' website and disclosing the secret information to the public while giving instruction on its use and value at an Illinois seminar sponsored by Smart Tools.

28.     At all times herein, Smart Tools as the employer of LeCara, knew the secret information it was using as its own was the direct and actual proprietary content of RockTape.

29.     RockTape has suffered actual and potential damages as a result of the intentional and willful taking of its secret information and disseminating it to the public and other competitors.

WHEREFORE, for all the foregoing reasons, Plaintiff herein prays for judgment in its favor and against the Defendants herein as outlined within the UTSA including:

A.     That the Plaintiff be awarded damages for actual loss caused by the misappropriation;

B.     That the Plaintiff be awarded damages for unjust enrichment not included in the actual damages above;

C.     That the Plaintiff be awarded attorneys' fees and costs upon a finding that the trade secret was maliciously and willfully taken;

D.      That the Plaintiff be awarded punitive damages of two times actual damages; and

E.      That the Plaintiff be awarded such other relief as this Court may deem just and proper.

## COUNT II

### Breach of Contract vs. LeCara

30.     Plaintiff adopts herein by reference paragraphs 1 through 21 above as though fully stated herein as paragraph 30 of Plaintiff's Count II.

31.     At all times herein, LeCara and RockTape entered contractual relationships with one another setting forth the respective duties owed between the parties and by their respective actions ratified same. See Exhibit A and B.

32.     Specifically, the Agreement states: "This Consulting Agreement (Agreement) dated this 1st March 2015 (the "Effective Date") is by and between RockTape, Inc. (ROCKTAPE) and Edward LeCara (Consultant) whereby ROCKTAPE does hereby retain Consultant to furnish the below-described services upon the following terms and conditions: **Services To Be Provided By Consultant** • 4 written assignments per month; to include but not exclusive to: articles for medical publications, medical blog contributions, product/packaging writing, quarterly literature reviews on kinesiology taping, education manual content etc. • Participation in one flagship RockTape event/year – i.e. Movement Summit, Crossfit Games etc. ; a. Consultant shall expend no more than 10 hours per week on the services listed above. b. Consultant agrees to perform all Services hereunder to ROCKTAPE's reasonable satisfaction. c. Consultant shall perform

Services under the supervision of and shall report directly to a specifically identified employee of ROCKTAPE, who shall initially be Alyson Evans.

33.    Further, the Agreement contains certain provisions as follows: "To protect ROCKTAPE rights in Developments and ROCKTAPE Materials as the confidential and proprietary property of ROCKTAPE, Consultant agrees that during the term of this Agreement and for an additional one (1) year following termination or expiration thereof, Consultant shall not directly or indirectly encourage nor seek to influence any employee of ROCKTAPE to quit or leave ROCKTAPE's employment nor to commence employment with Consultant, nor will Consultant make disparaging remarks about ROCKTAPE or any of its subsidiaries, affiliates, directors, officers, employees, agents, or other consultants." (See Agreement at para. 7).

34.    The Agreement also contains a certain provision requiring:    Non-Solicitation. Throughout the Term and for a period of one (1) year thereafter, Consultant shall not, either alone or as an agent, employee, partner, representative, affiliate, or in any other capacity on behalf of any person or entity, directly or indirectly, whether for Consultant's own account or for or with any other person or entity, (a) go into business with or hire any employee or contractor of ROCKTAPE or solicit, induce, or recruit any employee or contractor of ROCKTAPE to end its relationship with ROCKTAPE, or (b) solicit, do business with, call upon, handle, deliver products or render services to any active or prospective customer of ROCKTAPE with whom Consultant alone, or in combination with others, has worked or solicited throughout the Term.

35.    In the event of termination or cancellation of said Agreement LeCara must: "Return of Materials. Consultant shall deliver to ROCKTAPE promptly upon request, or

8

on the date of termination of work, any and all records, documents, copies thereof and any other ROCKTAPE Materials in Consultant's possession pertaining to ROCKTAPE's business, including, but not limited to, Confidential Information and/or Developments. Consultant shall continue thereafter to promptly return to ROCKTAPE any of the above-mentioned materials and all copies thereof pertaining to ROCKTAPE's business and/or originating with ROCKTAPE that come into Consultant's possession."

36.     Defendant, LeCara, breached the terms of the Agreement in various manners including but not limited to:

a.   Soliciting at least two employees of RockTape including Courtney Conley, D.C. and Milicia McDowell, D.C. to work for Smart Tools as instructors at Smart Tool seminars;

b.   Inducing employees and agents of RockTape to assist LeCara in the creation of content for use by others;

c.   Upon termination, failed to return originals and all copies of content and information in his possession including content, research, data, prototypes, and marketing materials;

d.   Through conducting seminars on behalf of Smart Tools and working on content to be placed on Smart Tools website has improperly solicited customers and prospective customers of RockTape;

e.   Otherwise breached various aspects alternative requirements of the Agreement distinct from the usurpation of Trade Secrets as set forth within Count I.

37.     Plaintiff complied with all obligations it owed to LeCara under the Agreement.

38.     As a direct result of LeCara's breach of the Agreement, RockTape has been damaged in that it lost revenue, lost the value of use of its employees, lost revenue from use and application of those materials not properly returned to RockTape and was otherwise damaged.

WHEREFORE, for all the foregoing reasons, Plaintiff herein prays for judgment in its favor and against the Defendants herein as outlined within the UTSA including:

A.      That the Plaintiff be awarded damages for actual loss caused by the breaches;

B.      That the Plaintiff be awarded attorneys' fees and costs as set forth within the Agreements;

C.      All other relief that this Court deems just and equitable.

### COUNT III

**Intentional Interference with Economic Business Advantage vs LeCara**

39.     Plaintiff adopts herein by reference paragraphs 1 through 21 above as though fully stated herein as paragraph 39 of Plaintiff's Count III.

40.     At all times herein, RockTape had business relationships with community members, physicians, and marketing representatives to sell, market and apply its products including but not limited to its IASTM content.

41.     As a result of RockTape seminars and use of RockTape marketing content on its website, in magazines and by its agents and employees, RockTape created a business in which it received pecuniary benefit from its efforts.

42.     RockTape has a demonstrative history of repeat customers and return of customers when it rolls out new products or enters new markets with its products including products such as IASTM tools and education of approximately 90%.

43.     RockTape had a reasonable expectation of continuing relationships with its client and customer base to ensure future economic advantage when it releases new or modified products such as IASTM tools and education.

44.     But for LeCara's direct actions in marketing and otherwise attesting that RockTape's two-year history of research and development of IASTM content, training and education was actually that owned and created by Smart Tools, which had not itself performed the research to alter the training and education methods, RockTape lost its reasonable expectation of economic advantage for the work it had performed in the development of these new training and education strategies.

45.     RockTape was damaged by LeCara's intentional interference with its business and lost actual revenue as well as future economic advantage.

WHEREFORE, for all the foregoing reasons, Plaintiff herein prays for judgment in its favor and against the Defendant herein for intentional interference with business advantage along with all other relief that this Court deems just and equitable.

## COUNT IV

### Intentional Interference with Economic Business Advantage vs Smart Tools

46.     Plaintiff adopts herein by reference paragraphs 1 through 21 above as though fully stated herein as paragraph 46 of Plaintiff's Count IV.

47. At all times herein, RockTape had business relationships with community members, physicians, and marketing representatives to sell, market and apply its products including but not limited to its IASTM content.

48. As a result of RockTape seminars and use of RockTape marketing content on its website, in magazines and by its agents and employees, RockTape created a business in which received pecuniary benefit from its efforts.

49. RockTape has a demonstrative history of repeat customers and return of customers when it rolls out new products or enters new markets with its products including products such as IASTM tools and education.

50. RockTape had a reasonable expectation of continuing relationships with its client and customer base to ensure future economic advantage when it releases new or modified products such as IASTM.

51. But for Smart Tools direct actions in presenting seminars, marketing and otherwise attesting that RockTape's IASTM release was actually developed and created by Smart Tools, RockTape lost its reasonable expectation of economic advantage.

52. RockTape was damaged by Smart Tools intentional interference with its business and lost actual revenue as well as future economic advantage.

WHEREFORE, for all the foregoing reasons, Plaintiff herein prays for judgment in its favor and against the Defendant herein for intentional interference with business advantage along with all other relief that this Court deems just and equitable.

## COUNT V

### Copyright Infringement

53.     Plaintiff adopts herein by reference paragraphs 1 through 21 above as though fully stated herein as paragraph 53 of Plaintiff's Count V.

54.     At all relevant times there was a statute in place commonly known Copyright Infringement Act, 17 U.S.C.A § 1201 *et seq.*

55.     At all times herein, RockTape was the legal and beneficial owner of an exclusive right of its products and content including but not limited to its IASTM content.

56.     At all times herein LeCara had actual knowledge that the work he conducted for RockTape was protected by copyright.

57.     At all times herein Smart Tools had actual or implied knowledge that the IATSM content and other work product LeCara presented for Smart Tool's use was protected copyright material.

58.     LeCara, individually and as an agent for Smart Tools copied the original elements of RockTape's copyrighted materials including the materials related to IASTM and related content, amongst other products outside of his contractual Agreement and without the express or implied authorization of RockTape.

59.     At all times herein, RockTape was the owner of the particular copyrighted material which LeCara and Smart Tool infringed upon including but limited to the IASTM and its content.

60.     RockTape was damaged by the infringement of its protected copyrighted materials

WHEREFORE, for all the foregoing reasons, Plaintiff herein prays for judgment in its favor and against the Defendant herein for copyright infringement and is thus entitled to all damages permitted within 17 U.S.C.A § 1201 *et seq.* along with all other relief that this Court deems just and equitable.

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Tracy E. Stevenson
Tracy E. Stevenson, ARDC: 6207780
One of the Attorneys for Plaintiff
Law Offices of Tracy E. Stevenson, P.C.
1400 N. LaSalle, suite 3N
Chicago, IL  606101
312-882-1227
email: Tracy@tracystevensonlaw.com

## VERIFICATION BY CERTIFICATION

Under penalties of perjury as provided by law and pursuant to 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this Verified Complaint at Law are true and correct except as to matter therein to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes same to be true.

Dated: _01/14/2017_

_____
VITALY GASHPAR, agent of RockTape, Inc.